# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY L. HILL, | CASE NO. 1:09-cv-00073-SMS |
| Plaintiff, | |
| v. | ORDER RE PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. / | |

Plaintiff Johnny L. Hill seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI"), pursuant to Title XVI of the Social Security Act (42 U.S.C. § 301 *et seq.*) (the "Act"). The matter is currently before the Court on the parties' cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, United States Magistrate Judge.[1] Following a review of the complete record, this Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this Court denies Plaintiff's appeal.

///

///

---

[1] In February 2009, both parties consented to the jurisdiction of a United States Magistrate Judge (Docs. 9 & 10).

1

**I.     Administrative Record**

    **A.     Procedural History**

On April 27, 2006, Plaintiff applied for SSI disability benefits, alleging disability beginning April 1, 1998. AR 9. On August 26, 2008, Administrative Law Judge Bert C. Hoffman, Jr., denied Plaintiff's application. AR 6-14. Plaintiff sought review of the ALJ's decision, contending that it was not based on substantial evidence in the record. AR 4. The Appeals Council denied review on November 24, 2008. AR 1-3. Plaintiff filed a complaint seeking this Court's review on January 12, 2009 (Doc. 1).

    **B.     Factual Record**

At the administrative hearing on February 19, 2008, Plaintiff (born March 25, 1988) testified that he experienced petit mal seizures as frequently as four to six times per week and grand mal seizures three to twelve times a month. AR 25-30, and 32. His mother, Shelley Davis, testified that Plaintiff may have up to nine petit mal seizures per day, some lasting just seconds. AR 46. Davis also described what she called the "blank stares," during which Plaintiff is not aware of her speaking and chews as if something were in his empty mouth. AR 47. Plaintiff's seizures may be triggered by stress, flashing lights, and certain odors. AR 51.

When Plaintiff experiences grand mal seizures, he loses consciousness and falls to the floor. AR 27, 48. At other times, he is able to protect himself by sitting on an open floor. AR 27. Plaintiff's longest seizure lasted twenty-five minutes; he estimated the usual duration is fifteen or twenty minutes, but Davis testified the usual seizure was four to ten minutes. AR 31, 48. Plaintiff is usually not aware when he is seizing, although he has had the experience of being conscious but unable to control his bodily movements. AR 31. He may bite his tongue or lose bladder or bowel control. AR 31-32, 139. Plaintiff has experienced seizures during sleep. AR 133, 139. Thereafter, his muscles may be sore from contractions, or he may have a headache or other injuries from falling. AR 31, 52-53.

After a small seizure, Plaintiff may feel lightheaded or nauseous, and may require up to an hour, at most, to recover. AR 28-29. After a grand mal seizure, he may sleep from two to

///

1   three hours. AR 31. Since his seizures have been uncontrolled, Plaintiff's memory has
2   deteriorated. AR 32, 133. Plaintiff also reported speech problems and fatigue. AR 133.
3         When Plaintiff experiences petit mal seizures, he throws up his arms and gasps for air,
4   sometimes creating a loud shrieking sound. AR 26. Being aware that others find his seizures
5   frightening, if he senses the onset of a seizure, Plaintiff attempts to go somewhere without many
6   people. AR 28.
7         Plaintiff's medical records confirm his ongoing seizure disorder. AR 160-177, 179-185,
8   206. An EEG report dated February 28, 2006, identified abnormal spiking brain waves,
9   recurring on some, but not all, prior EEG reports. AR 173, 182. Prior to February 2005,
10  Plaintiff's seizure activity was well controlled. AR 185.
11        On September 23, 2005, Plaintiff was taken to Community Medical Center, Clovis,
12  following a seizure. AR 151-158. Blood testing indicated a low valproic acid level (13.0
13  ug/mL). AR 158. Valproic acid is "a simple eight-carbon branched-chain fatty acid used in the
14  treatment of epileptic seizures, particularly absence seizures,; administered orally." Dorland's
15  Illustrated Medical Dictionary at 1791 (28th ed. 1994). The level of valproic acid generally
16  corresponds to the level of antiseizure medications in a patient's blood. The normal range for
17  valproic acid is 50-150 mcg/mL. AR 158.
18        Seizure activity increased after Plaintiff was struck by a car in early February 2006. AR
19  175-177, 182. As a result, Plaintiff was unable to attend school from February 3 through June
20  30, 2006, and his doctor requested that he be provided with a home school program. AR 181.
21        Kaiser Permanente records noted reports of more than one seizure per month from
22  February through July 2006. AR 160-162. Valproic acid level was also low on February 10,
23  2006 (17.3 mcg/mL) and March 17, 2006 (34.8 mcg/mL). AR 171, 172.
24        Plaintiff testified that he took 800 mg. of Lamictal daily, the maximum dose. AR 32-33.
25  Lamictal sometimes makes him drowsy and causes him to perceive an unpleasant, but
26  nonexistent, smell. AR 33-34. His application also indicated prescription of two other
27  ///
28  ///

anti-seizure medications: Depakote and Keppra. AR 119. Davis testified that the antiseizure medicines were often more effective when first prescribed and became less effective over time. AR 50.

Plaintiff acknowledged that he sometimes forgot to take his medications. AR 43. Davis testified that she was not aware that Plaintiff had ever gone long periods without medication. AR 55. Although she had previously been unsure about Plaintiff's compliance, by the time of the hearing, she made sure that Plaintiff took his medication, waking him to take medication before she leaves for work. AR 55.

In a July 2008 medical history, Dr. Yoshimura reported that, as a young child, Plaintiff had experienced early learning difficulties with significant speech delays, and was considered to have a cognitive disability. AR 221. Although Plaintiff attended regular school classes, he completed high school but did not receive a diploma. AR 22. Thereafter, he enrolled in a GED program, but because his shrieking seizures disrupted the classes, Plaintiff withdrew without completing the GED. AR 22.

Plaintiff testified that he could work full time if any one were willing to hire him. AR 24. Davis disagreed, citing the frequency of Plaintiff's seizures. AR 55. Except for occasional work raking yards, Plaintiff has been unable to secure a job. AR 23. He testified that employers did not want to hire some one whose seizures might expose them to liability or frighten their customers. AR 23.

Plaintiff lives with Davis. AR 106. He helps with such household chores as vacuuming, taking out trash, and washing dishes. AR 38. His uncontrolled seizures preclude his having a driver's license. AR 20.

Plaintiff does not ride a bike, skateboard, or roller blade, perceiving such activities as too risky. AR 36. He cannot participate in contact sports or swimming. AR 53. He does not bathe or shower when no one is home. AR 38. Similarly, his mother forbid his cooking when she is away because of the risk of a fire. AR 38.

After agency physicians reviewed Plaintiff's medical records, they concluded that Plaintiff had a seizure disorder that did not reach the severity of the listing level. AR 191-92.

1    Dr. Ocrant noted noting that the agency had "no corroboration of compliance or of frequency"
2    and no report after 3 months treatment on current regimen." AR 192.
3           Because of his seizures, Plaintiff is subject to postural and hazard limitations. AR 187-
4    189.  In a physical residual functional analysis, consultant G. Friedman noted that, because of
5    Plaintiff's epilepsy, he should not use ladders, ropes or scaffolds, be on unprotected heights, or
6    work with dangerous machinery or near open flames. AR 195, 197. Friedman reported that
7    Plaintiff's symptoms were under control as of June 26, 2006. AR194.
8           In a report dated July 24, 2007, Plaintiff's neurologist, Dr. Bankar, characterized
9    Plaintiff's seizures as "unpredictable despite medical intervention." AR 202. Seizure activity
10   had recently increased. AR 202. Plaintiff's medication made him drowsy. AR 202. Bankar
11   limited Plaintiff to no driving, ladder use or use of powered equipment. AR 202.
12          Kaiser Permanente records documented Plaintiff's reported seizures in 2007. AR 211-
13   220. Davis testified that those records were incomplete since she did not call the doctor's office
14   each time Plaintiff experienced a seizure. AR 52.
15          In a January 15, 2008 treatment note, Dr. Yoshimura ordered testing in response to a
16   recent increase in seizure frequency, including a generalized tonic-clonic seizure the prior night.
17   AR 207.  Yoshimura diagnosed Plaintiff with probable idiopathic primary generalized seizures,
18   incompletely controlled on current medications. AR 221.
19          In a letter dated March 18, 2008, Plaintiff's pediatric neurologist Dr. Dwarka Philip
20   Sankar wrote:

> I have been the neurologist for Johnny Hill from age 13 until age 18 years (last seen in 2006). During that time Johnny had a seizure disorder that has been difficult to control. He has been on multiple medications during that time and he has variable drug levels from subtherapeutic to high therapeutic levels. His persistently poorly controlled epilepsy has affected his ability to care for himself after a seizure, and his cognitive ability. A consequence is the type of employment he will be able to maintain.
>
> Drug therapeutic levels provide guidelines for accepted range of therapy but do not define whether a person is taking the correct dosage of medication. Efficacy of medication (in this case antiepileptic) is based primarily on how a person responds (ie lack of seizures).
>
> Employment for people with epilepsy is based upon their cognitive ability and control of seizures; in Johnny's case, although he is strong, he cannot be

5

employed in a capacity that requires lifting heavy objects or operating machinery because of his unpredictable seizures.

AR 230.

## II.     Discussion

### A.     Scope of Review

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, a court must determine whether substantial evidence supports the Commissioner's decision. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards, and if the ALJ's findings are supported by substantial evidence. *See Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 510 (9th Cir. 1987).

### B.     Legal Standards

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering age, education, and work experience, engage in any other substantial gainful work existing in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability. 20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f). The process requires consideration of the following questions:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? Is do, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since he applied for disability benefits on April 27, 2006. AR 11. His seizure disorder is a severe impairment. AR 11. The ALJ concluded, however, that Plaintiff's impairment did not meet the listed impairments in 20 C.F.R. Part 404, Subpart P. Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). AR 11.

Since Hill, who had recently completed high school, had not worked previously, the ALJ did not evaluate step four. At step five, the ALJ found that Plaintiff has residual functional capacity to perform a full range of work that did not involve working at unprotected heights, operating automotive equipment, or working around dangerous machinery. AR 11.

**C.     Plaintiff's Claims**

Plaintiff contends that the ALJ failed (1) to properly assess his seizure disorder; (2) to credit Plaintiff's cognitive impairment; (3) to properly assess Plaintiff's testimony; and (4) to properly assess Davis's testimony.

///

### 1. **Plaintiff's Seizure Disorder**

Plaintiff contends that the ALJ erred in failing to recognize that Plaintiff's impairment or combination of impairments met or equaled an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1. The categories of seizure impairments recognized by the regulations include:

> 11.02 *Epilepsy–convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 moths of prescribed treatment.* With:
> A. Daytime episodes (loss of consciousness and convulsive seizures) or
> B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.
>
> 20 C.F.R., Pt. 404, Subpt. P, App. 1, §11.02.
>
> 11.03 *Epilepsy–nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment.* With alteration of awareness or loss of consciousness and transient postictal manifestations or significant interference with activity during the day.
>
> 20 C.F.R., Pt. 404, Subpt. P, App. 1, §11.03.

The regulations prescribe demanding standards of proof in determining whether a claimant condition qualifies as a listed impairment. For §§ 11.02 and 11.03, they provide, in pertinent part:

> In epilepsy, regardless of etiology, degree of impairment will be determined according to type, frequency, duration, and sequelae of seizures. At least one detailed description of a typical seizure is required. Such description includes the presence or absence of aura, tongue bites, sphincter control, injuries associated with the attack, and postictal phenomena. The reporting physician should indicate the extent to which description of seizures reflects his own observations and the source of ancillary information. Testimony of persons other than the claimant is essential for description of type and frequency of seizures if professional observation is not available.
>
>   Under 11.02 and 11.03, the criteria can be applied only if the impairment persists despite the fact that the individual is following prescribed antiepileptic treatment. Adherence to prescribed antiepileptic therapy can ordinarily be determined from objective clinical findings in the report of the physician currently providing treatment for epilepsy. Determination of blood levels of phenytoin sodium or other antiepileptic drugs may serve to indicate whether the prescribed medication is being taken. When seizures are occurring at the frequency stated in 11.02 or 11.03, evaluation of the severity of the impairment must include consideration of the serum drug levels. Should serum drug levels appear therapeutically inadequate, consideration should be given to whether this is caused by individual idiosyncrasy in absorption of [*sic*] metabolism of the drug. Blood

8

> drug levels should be evaluated in conjunction with all the other evidence to determine the extent of compliance. When the reported drug levels are low, therefore, the information obtained from the treating source should include the physician's statement as to why the levels are low and the results of any relevant diagnostic studies concerning the blood levels. Where adequate seizure control is obtained only through unusually large doses, the possibility of impairment resulting from the side effects of this medication must also be assessed.

20 C.F.R., Pt. 404, Subpt. P, App. 1, §11.00 A.

This means that a claimant seeking to qualify for a listed disability based on a seizure disorder must document the persistence of his seizures despite his conforming to his prescribed treatment regimen.

The ALJ found that Hill's seizure disorder was a severe impairment but not an impairment that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404. Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926). AR 11. Although Plaintiff's medically determinable impairment could reasonably be expected to produce the alleged symptoms, the ALJ concluded that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were not credible. AR12. Although Kaiser's records for the period from February 2005 to June 2008 document their treatment of Plaintiff's seizure disorder and provide laboratory and imaging records showing the medical basis for Plaintiff's medically condition, notes throughout the records repeatedly question Plaintiff's compliance with his medications, report that Davis admitted her inability to attest to Plaintiff's compliance, and indicate that tests do not consistently show Plaintiff's medication levels to be therapeutic. In addition, Plaintiff's physician, Dr. Sankar, reported that lab tests could not document whether Plaintiff was consistently taken the correct dosages of his medications.

The scope of this Court's review of disability determinations is limited by 42 U.S.C. § 405(g), which provides, "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . . . " *See Chavies v. Finch*, 443 F.2d 356, 357 (9th Cir. 1971); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support a conclusion. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985). Even if the evidence is susceptible to more than one reasonable

///

interpretation, a reviewing court must uphold the ALJ's determination. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

The ALJ outlined the substantial evidence in the record supporting his conclusion that Plaintiff was not consistently compliant with his prescribed medication. In addition, Plaintiff himself acknowledged that he sometimes forgot to take his medications. AR 43. And, although his mother testified that she tried to make sure that Plaintiff took his medication, she was not aware whether he had ever gone an extended period of time without taking it. When an ALJ has made specific findings, supported by substantial evidence in the record, justifying his or her determination to believe or disbelieve a claim, this Court will not second-guess his or her decision. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989); *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

### 2. **Plaintiff's Cognitive Impairment**

In the course of his contention that the ALJ erred in concluding that Plaintiff did not meet the impairments listed in the record, Plaintiff contends that the ALJ had the duty to develop the record regarding Plaintiff's cognitive impairment, particularly whether the cognitive impairment itself or exacerbation of the cognitive impairment as a side effect of the anti-seizure medications rendered Plaintiff unable to protect his own interest. Plaintiff relies on case law imposing a greater duty to develop the record where a claimant may be mentally ill and unable to protect his own interest. Since nothing in this case suggests that Plaintiff is mentally ill and Plaintiff never argued below that his early cognitive impairment related to his disability in any way, this argument lacks merit.

Ambiguous evidence, especially when a claimant proceeds pro se or represented by a lay person rather than an attorney, triggers an ALJ's duty to conduct a further inquiry. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). In *Tonapetyan*, the reviewing court concluded that, because the non-examining psychological expert testified that the evidence from the claimant's treating psychiatrist was "confusing," recommended that a more detailed opinion be secured, and opined that whether the record was sufficient for the ALJ to reach a conclusion was "difficult to say," the ALJ erred in not making further inquiry. *Id.* at 1150-51.

In *Armstrong*, the ALJ and the district court struggled to determine the onset date of the claimant's severe depression in the face of insufficient evidence documenting that the claimant had been depressed prior to his last insured date. *Armstrong v. Commissioner of Social Security Admin.*, 160 F.3d 587, 589 (9th Cir. 1998). Although the record indicated that the claimant had experienced depression for many years prior to the last insured date, it included no evidence from which the date of disability could be determined. *Id.* at 590. Accordingly, the Ninth Circuit held that SSR 83-20 (governing onset of disability) required the ALJ to call a medical expert to create a record that would provide a basis for determining the disability onset date from the existing evidence. *Id.* The Court added, however, that its holding did not relieve a claimant of the ultimate burden of proving that he or she was disabled before their disability insured status expired. *Id.*

Nothing in the record suggest that Plaintiff ever contended that his cognitive impairments disabled him. The sole mention of his cognitive impairments was their inclusion in the medical history set forth in Dr. Yoshimura's report. Unlike *Tonapetayan*, no witness ever suggested that further evidence on the cognitive impairments was appropriate. Nor did a body of evidence exist that presented an ambiguity or uncertainty requiring further information for its resolution, as was the case in *Armstrong*. The ALJ was not required to further develop the factual record to determine whether Plaintiff was disabled by a cognitive impairment.

### 3. Proper Assessment of Plaintiff's Testimony

Plaintiff contends that the ALJ erred in rejecting Plaintiff's testimony that he experienced frequent disabling seizures. Plaintiff's contention appears to be that the ALJ erred in concluding that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were not credible. Although the ALJ did question the credibility of Plaintiff's testimony about his symptoms, Plaintiff's contention is unpersuasive.

To the extent that the ALJ's determined that Plaintiff did not consistently comply with his medication protocol, whether the ALJ believed Plaintiff's statements regarding the intensity, persistence and frequency of his seizures is immaterial. As discussed in point one, the record

///

supported that ALJ's conclusion that Plaintiff was not compliant; indeed, Plaintiff himself testified that he sometimes forgot to take his medication.

In addition, Plaintiff himself testified that he would be able to work at any of several jobs if employers were not concerned about liability for Plaintiff's injury or the negative effect of customer's witnessing Plaintiff's seizures. Plaintiff's testimony in that regard was buttressed by the opinion of Plaintiff's pediatric neurologist, Dr. Sankar, that Plaintiff could be employed based on his cognitive abilities and the control of his seizures so long as Plaintiff was not employed lifting heavy objects or operating machinery. AR 230. Consultant Friedman agreed, opining that Plaintiff could be employed in positions that did not expose him to unprotected heights, open flames, or dangerous machinery. AR 195, 197. Accordingly, the ALJ did not err in concluding that Plaintiff retained sufficient residual functional ability to be employed in an appropriate position.

### 4. **Proper Assessment of Davis's Testimony**

Plaintiff contends that the ALJ erred in failing to consider Davis's log of Plaintiff's seizures, which appears in the record at AR 147-148. This Court disagrees. Davis's log is inadequate to overcome the evidence on which the ALJ relied. The log includes entries for only 25 days between August 23, 2007, and January 24, 2008, ending with the note that Plaintiff's medication was increased in February 2008. It lacks detail regarding the times of many of the seizures and the circumstances under which all of the seizures occurred. And it is inconsistent with Davis's testimony the Plaintiff experienced daily petit mal seizures up to nine per day and omits any record of the "blank stare" or absence seizures. Because the log would not have overcome the evidence on which the ALJ relied, the ALJ's failure to include it in his decision or even to comment on it is, at best, harmless error.

### D. **Conclusion**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the

///

Commissioner of Social Security.  The Clerk of Court is DIRECTED to enter judgment in favor of the Commissioner and against Plaintiff.

IT IS SO ORDERED.

**Dated:     June 25, 2010**                             /s/ Sandra M. Snyder
                                                                   UNITED STATES MAGISTRATE JUDGE